IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CT-3429-FL

| | |
|---|---|
| JAWAN N. WALLACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| BRIAN CHRISTOPHER JOHNSON, MS. MOORE-BRIDGES, MATTHEW HUNDLEY, and ANTHONY R. HYPOLITE, | ) ) ) ) |
| | ) |
| Defendants.[1] | ) |

This matter is before the court on motion for summary judgment made by defendants Brian Christopher Johnson ("Johnson"), Matthew Hundley ("Hundley"), and Anthony R. Hypolite ("Hypolite"), (collectively, the "moving defendants") pursuant to Federal Rule of Civil Procedure 56 (DE 75).[2] Also pending are plaintiff's cross motion for summary judgment (DE 60) and his motion to disregard defendants' motion (DE 84). The cross motions for summary judgment have been briefed fully and in this posture the issues raised are ripe for ruling.

### STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint November 28, 2022, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983.

---

[1] The court constructively amends the case caption to reflect dismissal of plaintiff's claims against formerly named defendants warden Vaughn, associate warden Oliver, Katina Jordan, Cassandra Herring, Patricia Alston, Eddie Buffaloe, Tim Moose, Todd Ishee, and unnamed medical staff on August 16, 2023.

[2] Defendant Ms. Moore Bridges ("Moore-Bridges") has not appeared in this action since its inception and her default has been entered by the clerk. (DE 38).

Plaintiff alleges defendants failed to protect him from two assaults committed by other inmates, in violation of the Eighth Amendment to the United States Constitution. Plaintiff also asserts claim for gross negligence under North Carolina common law based on the same alleged conduct. As relief, plaintiff seeks compensatory and punitive damages.

Following a period of discovery, and in accordance with the court's case management order, plaintiff and moving defendants filed the instant cross motions for summary judgment. By his motion, plaintiff argues the record evidence shows that defendants failed to protect him from the two assaults as a matter of law, and that this conduct violated his Eight Amendment rights and constituted gross negligence.

In support, plaintiff relies upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) screenshots of the videorecording of one of the assaults; 2) photographs of a homemade knife or "shank," used during the assault; 3) photographs of plaintiff's injury; 4) Pasquotank Correctional Institution ("PCI") shift narratives; 5) records from the investigations of the two assaults; 6) excerpts of moving defendants' discovery responses; 7) training records for moving defendants; 8) plaintiff's medical records; 9) pertinent administrative grievances; 10) email from defendant Moore-Bridges to defendant Hypolite, dated March 4, 2021; 11) plaintiff's housing assignment records; 12) plaintiff's disciplinary records; 13) security risk group information for the inmates who attacked plaintiff; 14) disciplinary history and housing assignments for these same inmates; 15) email from Farrah Parks regarding plaintiff's placement in protective custody, dated March 18, 2021; 16) plaintiff's request for transfer; 17) excerpts of transcripts of hearing before the North Carolina Industrial Commission; 18) PCI custody reports and emails transmitting same; and 19) plaintiff's declaration of protection needs

dated March 4, 2021.

By their cross motion, moving defendants argue the undisputed record evidence shows they did not violate plaintiff's constitutional rights, and they raise the affirmative defense of qualified immunity. With respect to the state law claim, they argue the court should decline to exercise supplemental jurisdiction over this claim, that it fails on the merits, and that it is barred by public official immunity.

In support, moving defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) declaration of moving defendants' counsel Jordan Turner; 2) plaintiff's public offender information; 3) plaintiff's disciplinary history; 4) inmate Shaku Stephenson's ("Stephenson") control status history; 5) Stephenson's housing assignments; 6) the same incident reports and investigatory documents filed by plaintiff; 7) Stephenson's housing assignments; 8) Stephenson's disciplinary history; 9) department of Adult Correction ("DAC") policies on restrictive housing for administrative purposes and protective control; 10) email from Cindy Moore-Bridges to defendant Hypolite and others, dated March 4, 2021; 11) disciplinary histories for inmates Ernesto Asher ("Asher") and Joshua Howze ("Howze"); 12) emails from Farrah Parks regarding plaintiff's placement on protective control; 13) plaintiff's protective control action review; 14) video recording of the February 2, 2021, assault; 15) the same security threat group information filed by plaintiff; 16) declaration of Kimberly Grande, the executive director of the Inmate Grievance Resolution Board, with exhibits consisting of plaintiff's administrative grievances; and 17) moving defendants' personal declarations. Moving defendants also filed responsive statement of facts responding to plaintiff's statement.

Plaintiff responded in opposition to moving defendants' motion, and also filed the instant motion to disregard moving defendants' motion. In support, plaintiff places reliance on memoranda of law, responsive statement of facts, and the same exhibits filed in support of his cross motion for summary judgment.

**STATEMENT OF FACTS**

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. Plaintiff was housed at PCI during the relevant time period. (Compl. (DE 1-1) at 2; Defs' SOMF (DE 77) ¶ 5).[3] On February 2, 2021, while outside in the recreation yard, plaintiff was attached by inmate Stephenson with a shank. (Defs' Stmt. (DE 77) ¶ 6). At the time of the attack, defendant Hundley was the only correctional officer in the yard supervising plaintiff, Stephenson, and two unidentified inmates. (Feb. Assault Video (DE 83-1) Ex. Q).[4]

Prior to this assault, defendant Hundley did not "clear" the recreation yard before plaintiff's unit was released for recreation time. (See Hundley Disc. Resps. (DE 68-46) at 1–2). In other words, defendant Hundley failed to confirm that the inmates on recreation in the time slot prior to plaintiff's unit had all returned to their cells before plaintiff was allowed outside for recreation. (See id.). It is not clear, however, whether Stephenson was on the yard due to defendant

---

[3] Plaintiff's complaint is "sworn" before a notary pursuant to North Carolina law. (See DE 1-1 at 9). As a result, the complaint serves as an affidavit opposing summary judgment. See Jones v. Solomon, 90 F.4th 198, 206 n.7 (4th Cir. 2024) (concluding that a "notarial certificate for an oath or affirmation pursuant to North Carolina Law" is sufficient to construe filing as opposing affidavit at summary judgment); N.C. Gen. Stat. § 10B-43(a); N.C. Gen. Stat. § 10B-3(2)(C), (14)(c) (describing requirements for notarial act to satisfy "vow of truthfulness on penalty of perjury"). In addition, and throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

[4] The video of the February assault was filed manually, and remains on file, with the clerk's office. (See DE 80, 81). The docket entry in this citation refers to the placeholder document in the record.

Hundley's failure to perform this check, or whether he was allowed out a second time by other correctional officials. (See Hundley Decl. (DE 83-4) ¶ 3).[5]

Turning to the February 2021 assault itself, the undisputed video evidence may be summarized as follows. In the opening two minutes of the video, defendant Hundley is speaking with the two unidentified inmates on a basketball court, and plaintiff and Stephenson are positioned close to the PCI building. (Feb. Assault Video (DE 83-1) at 2:32:07–2:34:37). During this period, plaintiff and Stephenson are speaking to each other, and they both appear to walk toward and away from each other several times. (See id.). Notably, plaintiff does not assert that he and Stephenson were arguing or otherwise behaving in a manner that should have placed defendant Hundley on notice that officer intervention was necessary for this period of the video.

The physical altercation begins at approximately the 2:34:38 mark on the video with Stephenson appearing to make stabbing motions in plaintiff's direction. (Feb. Assault Video (DE 83-1)). At this stage, defendant Hundley remains close to the unidentified inmates but facing plaintiff and Stephenson's direction. (See id.). For the next four seconds, plaintiff and Stephenson continue fighting, and Stephenson continues to thrust his arm in a stabbing motion toward plaintiff with plaintiff attempting to move away from Stephenson. (See id. at 2:34:38–2:34:42). During this period, defendant Hundley moves slightly away from the unidentified inmates and directs his attention to plaintiff and Stephenson. (Id.). Defendant Hundley also called a "code four" notifying PCI staff of an active assault and seeking assistance from other officers. (Shift Narratives (DE 68-4) at 3).[6] Throughout this period, the unidentified inmates

---

[5] As set forth below, the court will assume without deciding that defendant Hundley both failed to clear the recreation yard and that Stephenson remained on the yard past his designated time.

[6] Plaintiff acknowledges that "once defendant Hundley noticed the attack he did call the code 4." (Pl's Mem.

5

remain between defendant Hundley and the ongoing altercation between plaintiff and Stephenson. (Feb. Assault Video (DE 83-1) at 2:34:38–2:34:42).

At approximately 2:34:43, plaintiff and Stephenson separate from each other, and plaintiff runs alongside the building with Stephenson chasing him. (Id. at 2:34:43–2:34:45). Stephenson reaches plaintiff and briefly resumes the assault while plaintiff manages to disentangle himself and run alongside the building in the opposite direction. (Id. at 2:34:45–2:34:51). At this stage, plaintiff reaches defendant Hundley, who moved towards the building in the direction of the altercation at the 2:34:49 mark on the video. (Id.). Defendant Hundley then stands between plaintiff and Stephenson until the backup officers arrive. (Id. at 2:34:52–2:35:10). Thus, as plaintiff emphasizes, defendant Hundley was facing in the direction of the altercation for approximately 11 seconds, and while he called the code four he did not otherwise intervene during this time period. (See id. at 2:34:38–2:34:49). Plaintiff was seriously injured by the knife wounds. (Photographs (DE 68-3); Medical Records (DE 68-13)).

Following the February 2021 assault and medical treatment at a community hospital, plaintiff was transferred to restrictive housing (and thereby protected from Stephenson) for approximately 30 days. (See Pl's Housing Assignments (DE 68–18) at 1; Medical Records (DE 68-13) at 3). On March 4, 2021, defendant Moore-Bridges sent an email to various correctional officers, including defendant Hypolite, directing that plaintiff be transferred back to "regular population." (Moore-Bridges Email (DE 68-17) at 1). That same day, plaintiff signed a "declaration of protection needs" which stated as follows:

> I, Jawan Wallace, do not need to be protected, and request that I be retained in regular population at [PCI] and not the restrictive housing unit as offered to me by staff. I am willing to assume all risk normally associated with a regular population

(DE 86) at 10).

6

Case 5:22-ct-03429-FL    Document 94    Filed 09/30/25    Page 6 of 16

assignment. This is my decision and [I] will not hold [DAC] responsible for anything related to this decision.

(DE 68-38). On March 5, 2021, plaintiff was transferred to the same housing unit where he resided prior to the February 2021 assault. (Pl's Housing Assignments (DE 68-18) at 1).

That same day, plaintiff was assaulted again by inmates Asher and Howze. (Compl. (DE 1-1) at 4). There is no video evidence of this assault, but plaintiff avers that these two inmates ambushed him while he was using the telephone, stabbing him with a shank and causing additional injuries. (Id.). Notably, at the time of this assault, Asher belonged to the same gang as Stephenson, while plaintiff belonged to a rival gang. (See Security Risk Group Info. (DE 83-1) at 61–62, 64).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[7]

Only disputes between the parties over facts that might affect the outcome of the case

---

[7] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.   Analysis

   1.   Eighth Amendment Failure to Protect Claims

As to plaintiff's Eighth Amendment claims, defendants raise the affirmative defense of qualified immunity. The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233

The court begins with the first prong. The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994); see Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Under the first prong, "a prisoner must establish . . . a serious or significant physical or emotional injury" or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014).

9

The deliberate indifference prong requires a showing that defendants knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837–38; Danser, 772 F.3d at 347. A plaintiff may establish deliberate indifference by producing direct evidence showing the prison official had actual knowledge of the risk and failed to protect him. Farmer, 511 U.S. at 842–43. As an alternative, "a prison official's subjective actual knowledge can be proved through circumstantial evidence" by showing that the risk was "obvious" and that the circumstances suggest the defendants must have known about it. Makdessi, 789 F.3d at 133; see also Farmer, 511 U.S. at 842. The official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844; Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

As set forth above, plaintiff alleges two separate claims for failure to protect him from inmate assaults. Turning first to the February 2, 2021, assault, plaintiff argues defendant Hundley was deliberately indifferent both before and during the assault. (See Pl's Mem. (DE 61) at 18–19). But there is no evidence that defendant Hundley was aware of any risk to plaintiff prior to the assault occurring. (See also Hundley Decl. (DE 83–4) ¶ 3 (defendant Hundley explaining he had never met plaintiff prior to the first assault). Moreover, the fact that defendant Hundley may not have "cleared" the recreation yard prior to plaintiff's unit being released for recreation does not show that he was aware of and disregarded any specific risk to plaintiff. (See Hundley Disc. Resps. (DE 68-46) at 1–2). In any event, negligent failure to comply with PCI policies is not

10

enough to show an Eighth Amendment violation. Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022) ("Simple failure to comply with the law is not deliberate indifference. It is not enough simply to point to what could or should have been done. That is the language of negligence.").

Turning next to defendant Hundley's conduct during the assault itself, there is no dispute that he called a "code four" seeking assistance when he became aware of the assault, or that he stood between plaintiff and Stephenson after plaintiff got away from Stephenson. (See Pl's Mem. (DE 86) at 10; Shift Narratives (DE 68-4) at 3; Feb. Assault Video (DE 83-1) at 2:34:52–2:35:10). Such good faith efforts to address the assault typically preclude finding of deliberate indifference. Koon, 50 F.4th at 407.

It is true that defendant Hundley did not intervene immediately to break up the assault. But defendant Hundley was standing between two unidentified inmates and plaintiff/Stephenson during this time period. (Feb. Assault Video (DE 83-1) at 2:32:07–2:35:10). Outnumbered four to one, and facing an active physical altercation between two inmates, one of whom had a knife, delaying intervention for 11 seconds until backup arrives does not establish deliberate indifference. See Graham v. Connor, 490 U.S. 386, 396-97 (1989) (explaining that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving" and courts must take that circumstance into account when considering whether a constitutional violation occurred). And this is particularly the case where plaintiff and Stephenson were engaging in mutual fighting and plaintiff successfully escaped from Stephenson twice during the incident. (See Feb. Assault Video (DE 83-1) at 2:34:38–2:34:49). In other words, defendant Hundley was faced with breaking up an ongoing fight between two inmates as opposed to a situation where plaintiff was subdued with Stephenson actively striking him with the

11

shank. In these circumstances, it is not unreasonable to delay intervention for a brief period to determine whether the attacked inmate can get to safety while maintaining security of the two inmates positioned near defendant Hundley. See Ford v. Hooks, 108 F.4th 224, 231 (4th Cir. 2024) (requiring evidence that defendant "recognized that [his] response[] [was] inappropriate"). Accordingly, plaintiff fails to show a triable issue of fact on his Eighth Amendment claim against defendant Hundley.

The remaining Eighth Amendment claim also cannot survive moving defendants' motion. As set forth above, plaintiff agreed to return to regular population on March 4, 2021, stating that he was "willing to assume all risks normally associated with a regular population assignment" and that he will not hold DAC officials responsible for "anything related to this decision." (Decl. of Protection Needs (DE 68-38) at 1). In addition, there is no evidence in the record suggesting moving defendants or defendant Moore Bridges were aware of a further risk of harm to plaintiff by transferring him to regular population. As plaintiff acknowledges, Stephenson was not in regular population at the time of this transfer. (Defs' Stmt. (DE 77) ¶¶ 12, 13; Stephenson Housing assignments (DE 83-1) at 16; Stephenson Control Status (DE 83-1) at 11–12). And plaintiff fails to show that defendants were aware of any risk from other gang members or allies of Stephenson in regular population. Indeed, he expressly stated there was no such risk. (Decl. of Protection Needs (DE 68-38) at 1). Accordingly, this claim is without evidentiary support.

In addition, and in the alternative, moving defendants are entitled to qualified immunity on the basis of the second prong. With respect to the second, "clearly established" prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

12

Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 170 (4th Cir. 2016). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). And court "must define the right in light of the specific context of the case, not as a broad general proposition." Younger, 79 F.4th at 385. This "do[es] not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

There is no case law suggesting moving defendants' actions in the circumstances presented here amounted to deliberate indifference. With respect to defendant Hundley, it is true that "a correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the rights of the victim inmate." Thompson v. Commonwealth of Va., 878 F.3d 89, 109 (2017). But in Thompson, the officer took "no action whatsoever" to prevent another officer from subjecting plaintiff to a "rough ride." Id. at 94–95, 109. And in Makdessi v. Fields, 789 F.3d 126, the United States Court of Appeals for the Fourth Circuit reversed an award of summary judgment where the evidence showed that defendants failed to protect a vulnerable inmate from the risk of sexual assault by his sexually aggressive cellmate. 789 F.3d at 128–31, 135–36. Here, unlike Thompson or Makdessi, defendant Hundley called for reinforcements, and then waited 11 seconds for them to arrive before moving to intervene in the assault, in circumstances where he was outnumbered four to one. (See Feb. Assault Video (DE 83-1) at 2:34:38–2:35:10). There is no clearly established law showing that this conduct amounted to an Eighth Amendment violation. See King v. Riley, 76 F.4th 259, 265–68 (4th Cir.

13

2023) (explaining that failure to protect cases require existing precedent with relatively analogous facts to satisfy the clearly established prong)

And with respect to the March 5, 2021, assault, plaintiff relies on the fact that he was returned to the same unit, where members of the same gang as Stephenson's were housed, to show defendants were deliberately indifferent. The parties have not provided, and the court has not found, any pertinent law showing this conduct violates the Eighth Amendment, particularly where, as here, there is no evidence showing the officers were aware that the first assault was gang related. And even assuming that this conduct violated internal PCI policies, that is insufficient to show either a constitutional violation or that the right was clearly established. See id. at 267–69.

In sum, plaintiff has not come forward with sufficient evidence to create a triable issue of fact on his Eight Amendment claims. In addition, moving defendants are entitled to qualified immunity on these claims. Accordingly, their motion for summary judgment is granted,[8] and plaintiff's motions are denied as to the Eighth Amendment claims.

2. Gross Negligence

As noted above, plaintiff also asserts that defendants' conduct amounted to gross negligence under North Carolina law. If all federal claims are dismissed before trial, a court should generally refrain from exercising supplemental jurisdiction. E.g., United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Henderson v. Harmon, 102 F.4th 242, 251 (4th Cir. 2024). Here, the court finds that "declining to exercise jurisdiction would not be inconvenient, unfair, or wasteful of judicial resources" particularly where the legal standards for the federal and state law

---

[8] To the extent plaintiff argues that defendants' motion should be denied as untimely filed, that argument is without merit. Defendants timely submitted their motion for summary judgment in accordance with the case management order. (See DE 69).

14

claims differ to some degree, and the immunity doctrines applicable thereto are different. Henderson, 102 F.4th at 251; see Smith v. North Carolina, 289 N.C. 303, 331 (1976) (discussing public officer immunity); FDIC ex rel. Co-op. Bank v. Rippy, 799 F.3d 301, 314 (4th Cir. 2015) (discussing gross negligence under Noth Carolina law). Moreover, despite moving defendants' argument that the court should decline to exercise supplemental jurisdiction, plaintiff offers no argument for retaining jurisdiction of his state law claim.

    3.    Defendant Moore-Bridges

Defendant Moore-Bridges did not appear in this action and the clerk has entered her default on the record. (DE 38). However, moving defendants' successful showings that they were not deliberately indifferent to the risk of harm, and that they are entitled to qualified immunity, inures to the benefit of defendant Moore-Bridges. U.S. ex rel. Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967) ("Where the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of [any non-moving] defendant."). Accordingly, judgment as a matter of law also must be entered as to plaintiff's federal constitutional claims against defendant Moore-Bridges. As set forth above, the state law claim is dismissed without prejudice to plaintiff bringing same in state court, including against defendant Moore-Bridges.

## CONCLUSION

Based on the foregoing, moving defendants' motion for summary judgment (DE 75) is GRANTED. Plaintiff's state law claim for gross negligence is dismissed without prejudice to filing same in state court. Plaintiff's motions for summary judgment (DE 60) and to disregard moving defendants' motion (DE 84) are DENIED. The clerk is DIRECTED to close this case.

15

SO ORDERED, this the 30th day of September, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge

16